**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE HEALTHCARE SERVICES GROUP, INC. DERIVATIVE LITIGATION | Case No. 2:20-cv-03426-KSM |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED**
**MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT**

## **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................... 1

II.     FACTUAL BACKGROUND ......................................................................................... 3

III.    PROCEDURAL BACKGROUND.................................................................................. 6

     A.      The Pennsylvania Federal Derivative Actions........................................................ 6

     B.      The Pennsylvania State Court Actions .................................................................... 7

     C.      Settlement Negotiations .......................................................................................... 8

IV.     TERMS OF THE SETTLEMENT ................................................................................. 9

V.      THE SETTLEMENT MERITS PRELIMINARY APPROVAL.................................... 10

     A.      Applicable Legal Standards .................................................................................. 10

     B.      The Settlement Is Within the Range of Possible Final Approval ......................... 11

          1.      The Settlement Is the Product of Arm's Length Negotiations and Is Therefore Presumptively Fair and Reasonable ......................................... 11

          2.      The Settlement Confers Substantial and Material Benefits on HCSG ..... 12

          3.      The Settlement Appropriately Balances the Significant Risks of Continued Litigation with the Benefits Conferred Upon HCSG and Its Stockholders ........................................................................................ 14

VI.     THE NOTICE PROCEDURES OUTLINED IN THE STIPULATION ARE REASONABLE ............................................................................................................ 16

VII.    PROPOSED SCHEDULE ............................................................................................ 17

VIII.   CONCLUSION............................................................................................................. 18

## **TABLE OF AUTHORITIES**

PAGE(S)

CASES

*Bell Atl. Corp. v. Bolger*,
   2 F.3d 1304 (3d Cir. 1993).................................................................................14

*Bradburn Parent Teacher Store, Inc. v. 3M (Minnesota Mining & Mfg. Co.)*,
   513 F. Supp. 2d 322 (E.D. Pa. 2007) .................................................................16

*Cohn v. Nelson*,
   375 F. Supp. 2d 844 (E.D. Mo. 2005)..................................................................9

*Eichenholtz v. Brennan*,
   52 F.3d 478 (3d Cir. 1995)....................................................................................2

*Gates v. Rohm & Haas Co.*,
   248 F.R.D. 434 (E.D. Pa. 2008).........................................................................11

*In re Apollo Grp., Inc. Sec. Litig.*,
   2010 WL 5927988 .............................................................................................15

*In re Apollo Grp., Inc. Sec. Litig.*,
   No. CV 04-2147, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008), *rev'd and
   remanded,* No. 08-16971, 2010 WL 5927988 (9th Cir. June 23, 2010).................15

*In re Auto. Refinishing Paint Antitrust Litig.*,
   MDL No. 1426, 2004 WL 1068807 (E.D. Pa. May 11, 2004) ...................10, 11, 12

*In re Chickie's & Pete's Wage & Hour Litig.*,
   No. 12-6820, 2014 WL 911718 (E.D. Pa. Mar. 7, 2014) ......................................12

*In re Fab Universal Corp. S'holder Derivative Litig.*,
   148 F. Supp. 3d 277 (S.D.N.Y. 2015)..................................................................11

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995)..................................................................................16

*In re Inter-Op Hip Prosthesis Liab. Litig.*,
   204 F.R.D. 330 (N.D. Ohio 2001) .......................................................................11

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
   961 F. Supp. 2d 708 (E.D. Pa. 2014) ....................................................................2

*In re NVIDIA Corp. Derivative Litig.*,
    No.06-06110, 2008 WL 5382544(N.D. Cal. Dec. 22, 2008 (quoting *Cohn v. Nelson*, 375 F. Supp. 2d 844, 853 (E.D. Mo. 2005); *accord Unite Nat. Ret. Fund v. Watts*, No. Civ.A. 04CV3603DMC, 2005 WL 2877899, at *5 (D.N.J. Oct. 28, 2005) ...........................................................................................................9

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ..........................................................................10

*In re Sch. Asbestos Litig.*,
    921 F.2d 1330 (3d Cir. 1990)................................................................................16

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)..................................................................................16

*Maher v. Zapata Corp.*,
    714 F.2d 436 (5th Cir. 1983) ...................................................................13, 15, 16

*Mehling v. New York Life Ins. Co.*,
    246 F.R.D. 467 (E.D. Pa. 2007)......................................................................11, 12

*Mills v. Elec. AutoLite Co.*,
    396 U.S. 375, 90 S. Ct. 616, 24 L. Ed. 2d 593 (1970)..........................................13

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ................................................................................12

*Shlensky v. Dorsey*,
    574 F.2d 131 (3d Cir. 1978)..................................................................................12

*Tenuto v. Transworld Sys., Inc.*,
    No. CIV.A. 99-4228, 2001 WL 1347235 (E.D. Pa. Oct. 31, 2001).......................10

*Thomas v. NCO Fin. Sys., Inc.*,
    No. CIV.A. 00-5118, 2002 WL 1773035 (E.D. Pa. July 31, 2002).......................10

*Unite Nat. Ret. Fund v. Watts*,
    No. Civ.A. 04CV3603DMC, 2005 WL 2877899 (D.N.J. Oct. 28, 2005) ..........9, 13

## STATUTES RULES AND REGULATIONS

Federal Rules of Civil Procedure
    Rule 23(e).............................................................................................................10
    Rule 23.1(c)........................................................................................................1, 10

**OTHER AUTHORITIES**

7 Alba Conte & Herbert Newberg, Newberg on Class Actions § 22.110, at 476
(4th ed. 2002) ...................................................................................................10

7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice
and Procedure: Civil 3D §1839, at 195 (2007) ..................................................10

*Manual for Complex Litigation* (Fourth) §21.632 (2004) ...........................................10

*Manual for Complex Litigation* (Fourth) §23.14 (2004) .............................................10

Pursuant to Fed. R. Civ. P. 23.1(c) of the Federal Rules of Civil Procedure, Plaintiffs Portia E. McCollum ("McCollum") and Maria and Clemente Batan ("Batan") ("Plaintiffs"), on behalf of Healthcare Services Group, Inc. ("HCSG" or the "Company"), respectfully submit this Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Derivative Settlement.  The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement (the "Stipulation") dated April 6, 2022, attached hereto as Exhibit A.  Specifically, Plaintiffs respectfully request that this Court enter an order providing for, among other things:  (i) preliminary approval of the Settlement[1] as set forth in the Stipulation; (ii) approval of the method of providing notice of the Settlement to Current HCSG Stockholders; (iii) approval of the form of the Notice attached as Exhibit B to the Stipulation; and (iv) setting a date for the Settlement Hearing for the purpose of determining whether the Settlement should be finally approved as fair, reasonable, and adequate.[2]

## I.    INTRODUCTION

The proposed Settlement resolves breach of fiduciary duty and related claims predicated on allegations that the Individual Defendants (defined, *infra*) (a) manipulated the Company's publicly reported earnings-per-share ("EPS"); (b) concealed that the Company had received a subpoena from the U.S. Securities and Exchange Commission ("SEC"); and (c) maintained deficient internal controls.  Plaintiffs alleged that the Defendants' misconduct caused the Company significant damages. The Settlement commits the Board to the adoption and maintenance of a

---

[1]     Unless noted otherwise, all capitalized terms used herein shall have the same meaning as set forth in the Stipulation.

[2]     The Settlement will also resolve the related consolidated shareholder derivative action pending in the Pennsylvania Court of Common Pleas, Bucks County (the "State Court"), captioned *In re Healthcare Services Group, Inc. Deriv. Litig.*, Case No. 2021-03255 (the "Pennsylvania State Court Derivative Action," and together, with the above-captioned action (the "Action"), the "Derivative Actions" or "Litigation").

comprehensive package of corporate governance and oversight reforms (the "Corporate Governance Reforms"), which the Parties agree provides value to the Company, significantly enhances long-term shareholder value, and protects HCSG and its shareholders from a repeat of these recent damaging events.

In determining whether preliminary approval of the Parties' proposed Settlement is warranted, the sole issue before the Court is whether the Settlement is within the range of what could be found to be fair, reasonable, and adequate so that notice can be given to Current HCSG Stockholders and a Settlement Hearing can be scheduled for the Court to consider final approval of the Settlement. *See Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995); *In re Nat'l Football League Players' Concussion Inj. Litig.*, 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014). The Settlement is the product of substantial effort, advocacy, and arm's-length negotiations conducted by skilled and experienced counsel for Plaintiffs,[3] the Individual Defendants,[4] and nominal defendant HCSG.[5] The Settlement guarantees HCSG the substantial benefits of the Corporate Governance Reforms provided for in the Stipulation, which will improve the Company's internal controls and directly address the alleged deficiencies that Plaintiffs contend resulted in the alleged wrongdoing. Accordingly, in recognition of the substantial, valuable benefits conferred upon HCSG as a result of the initiation, prosecution, and settlement of the Actions, the Stipulation

---

[3]     "Plaintiffs" herein refers to the plaintiffs in both the Action and in the Pennsylvania State Court Derivative Action.

[4]     The "Individual Defendants" are Theodore Wahl, Michael E. McBryan, Daniel P. McCartney, John C. Shea, Matthew J. McKee, Jude Visconto, John M. Briggs, Diane S. Casey, Robert L. Frome, John J. McFadden, Dino D. Ottaviano, Daniel Castagnino, Robert J. Moss, Laura Grant, Andrew W. Kush, David Hurlock, Jason J. Bundick, Bryan D. McCartney, Kevin P. McCartney, Stephen Newns, and James R. Bleming.

[5]     HCSG and the Individual Defendants are referred to collectively herein as the "Defendants."

further provides that the Individual Defendants' insurers will pay Plaintiffs' counsel the agreed-to Fee and Expense Amount of $1,000,000, subject to Court approval. The Settling Parties[6] reached this agreed-to Fee and Expense Amount with the assistance of an experienced mediator, Robert A. Meyer, Esq. of JAMS (the "Mediator"). The Settling Parties' recommendation that the Court preliminarily approve the Settlement is based on their joint belief that the Settlement confers substantial benefits upon, and is in the best interests of, the Company and Current HCSG Stockholders, as informed by their respective investigations, rigorous evaluation of the strengths and weaknesses of the claims and defenses, and careful evaluation of the value of the corporate governance measures, when weighed against the risks, costs, and delays that would arise from attempting to improve the result through lengthy and costly continued litigation.

For these reasons, Plaintiffs respectfully request that the Court enter an Order granting preliminary approval of the Settlement, approving the form, content, and dissemination of the Notice, and setting a date for a Settlement Hearing.

## II.     FACTUAL BACKGROUND

HCSG, a Pennsylvania corporation headquartered in Bensalem, Pennsylvania, provides outsourced housekeeping and dining services to long-term and post-acute healthcare facilities in the U.S. The Company's customers include over 3,000 facilities, such as nursing homes, assisted living facilities, skilled nursing facilities, rehabilitation centers, and psychiatric hospitals.

In the Derivative Actions, Plaintiffs allege that the Individual Defendants engaged in or permitted a long-term scheme to make it appear that the Company met or exceeded analysts' consensus estimates for the Company's earnings per share ("EPS"), a key financial metric relied upon by investors as an indicator of a company's profitability. In addition, the Derivative Actions

---

[6]     "Settling Parties" refers collectively to Plaintiffs, HCSG, and Individual Defendants.

allege that while the Company's stock price was artificially inflated, certain of the Individual Defendants sold shares of their personally held HCSG stock while in possession of material, non-public information.

In March 2017, investment analyst Monocle Accounting Research ("Monocle") published a report (the "Monocle Report") alleging that the Company had manipulated its reported EPS in the last forty-four consecutive quarters. According to the Monocle Report, HCSG had improperly rounded up EPS results during each of these quarters. The Monocle Report stated that it was "improbab[le] that this is the result of anything but the active management of the company's EPS." According to the Monocle Report, Monocle ran the calculations and noted that, since the odds of rounding up EPS are theoretically the same as rounding down EPS, the results are the equivalent of flipping a coin and coming up with heads forty-four times in a row, "the odds of which are a staggering **1 in 17.6 trillion**." (Emphasis in original).

In November 2017, the U.S. Securities and Exchange Commission (the "SEC") initiated an initial-stage investigation, or a "Matter Under Inquiry" ("MUI"), into HCSG's alleged manipulation of its EPS. In March 2018, five months after initiating its MUI, the SEC escalated its investigation to a "Formal Order of Investigation" and issued a subpoena to the Company.

The Derivative Actions also allege that the Individual Defendants failed to timely disclose that the Company had been subpoenaed by the SEC, instead representing publicly that there was "no" pending investigation into the Company or its practices. According to the Plaintiffs' allegations, on December 31, 2018, the Company filed a Current Report on Form 8-K with the SEC, attaching a document which affirmatively represented: "[t]here are no actions, suits, proceedings or investigations pending" against the Company. The Derivative Actions further allege that in the fourth quarter of 2018, it was not timely disclosed to shareholders that the

Company's outside counsel was authorized by the Company's Audit Committee to conduct an internal investigation into the matters related to the SEC subpoena.

On March 4, 2019, almost two years after the Monocle Report's allegations of EPS manipulation, HCSG finally disclosed that the SEC had been investigating the Company's EPS calculations and practices for approximately sixteen months. The Company further disclosed that, during the fourth quarter of 2018, "outside counsel" was authorized to conduct an internal investigation under the direction of the Audit Committee into matters related to the SEC's March 2018 subpoena. HCSG also announced that it would delay the filing of its Annual Report on SEC Form 10-K due to the ongoing investigations.

On the news of the SEC investigation, the price of the Company's stock fell by $4.96 per share on March 4, 2019, closing at a price of $32.78 per share, down over 13% from the prior day's closing price of $37.24 per share. As a relatively low-volatility stock, this was the largest single day percentage decline in the Company's thirty-nine-year trading history.

In connection with its March 4, 2019 disclosures, the Company acknowledged that the SEC investigation "could result in potential sanctions or penalties" and "could adversely affect or cause variability in our financial results." On March 22, 2019, investors initiated a federal securities class action lawsuit in this Court naming the Company as a defendant, captioned *Koch v. Healthcare Services Group, Inc. et al.*, 2:19-CV-01227 (E.D. Penn.) ("the Securities Class Action"), and alleging claims for violations of the federal securities laws on behalf of investors who purchased or otherwise acquired HCSG common stock during the "Class Period" from April 8, 2014 through March 4, 2019.[7]

---

[7]     On January 12, 2022, this Court entered an order finally approving the settlement of the Securities Class Action for $16.8 million and dismissing the Securities Class Action with prejudice.

Plaintiffs allege in the Derivative Actions that the Individual Defendants breached their fiduciary duties they owed to the Company, causing HCSG to incur damages related to the SEC investigation and the internal investigation, as well as the Securities Class Action.

## III.    PROCEDURAL BACKGROUND

### A.    The Pennsylvania Federal Derivative Actions

On April 24, 2019, plaintiff McCollum sent a pre-suit demand under Pennsylvania law (the "McCollum Demand"), demanding that the Board commence a civil action against Individual Defendants Wahl and Shea for breach of their fiduciary duties to HCSG to recover the costs and expenses associated with the defense of the Securities Class Action; reimburse the Company for reputational harm caused by the improper EPS calculation and reporting; and indemnify the Company for the sanctions or penalties imposed by the SEC, as well as any damages incurred in connection with the Securities Class Action.  Additionally, McCollum demanded that the Board implement various corporate governance reforms at the Company.  On July 13, 2020, McCollum commenced a stockholder derivative action in this Court (the "*McCollum* Derivative Action") on behalf of HCSG to remedy alleged breaches of fiduciary duty and other violations of law allegedly committed by the Individual Defendants.

On October 21, 2019, plaintiffs Batan sent a substantially similar pre-suit demand under Pennsylvania law to the Board.  Therein, Batan demanded that the Board investigate and take all necessary actions to remedy the alleged breaches of fiduciary duty.  On June 24, 2021, Batan commenced a stockholder derivative action (the "*Batan* Derivative Action") in this Court on behalf of HCSG seeking substantially similar relief as in the *McCollum* Derivative Action.[8]

---

[8]    The *McCollum* and *Batan* Derivative Actions filed in this Court sought substantially similar relief as the *Reisman/Ivary* and *Berezin* Derivative Actions brought in the State Court.

On July 30, 2020, the Court granted a stipulated stay of the proceedings of the *McCollum* Derivative Action wherein the parties stipulated to a stay pending the outcome of an investigation conducted by the Company's special litigation committee into the allegations in the *McCollum* Derivative Action.  In an effort to preserve judicial and party resources, on June 29, 2021, the parties in the *McCollum* and *Batan* Derivative Actions submitted a joint stipulation consolidating the actions and appointing co-lead counsel and liaison counsel, which was granted on June 30, 2021.

### B.      The Pennsylvania State Court Actions

On December 2, 2020, plaintiff David J. Reisman ("Reisman") sent a pre-suit demand to HCSG's Board of Directors (the "Board") pursuant to Pennsylvania law demanding that the Board take action to remedy the alleged breaches of fiduciary duties by the Individual Defendants and implement corporate governance reforms targeted at preventing a reoccurrence of the alleged breaches of fiduciary duties.  On June 21, 2021, plaintiff Liisa Ivary ("Ivary") and Reisman commenced a stockholder derivative action (the "*Reisman/Ivary* Derivative Action") on behalf of HCSG to remedy alleged breaches of fiduciary duty and other violations of law allegedly committed by the Individual Defendants and requesting any other relief in the Court of Common Pleas of Bucks County, Pennsylvania ("State Court").

On November 3, 2020, plaintiff Arnold Berezin issued a substantially similar pre-suit demand to the Board under Pennsylvania law.  On June 24, 2021, Berezin also commenced a stockholder derivative action (the "*Berezin* Derivative Action") in the State Court on behalf of HCSG seeking substantially similar relief as in the *Reisman/Ivary* Derivative Action.

In an effort to preserve judicial and party resources, on June 29, 2021, the parties in the *Reisman/Ivary* and *Berezin* Derivative Actions submitted a joint stipulation consolidating the actions and appointing co-lead counsel and liaison counsel, which was granted on July 6, 2021.

### C.     Settlement Negotiations

On July 14, 2021, for purposes of commencing settlement discussions, Defendants sent the Plaintiffs a list of remedial and governance measures undertaken by HCSG since the receipt of Plaintiffs' respective pre-suit demands.

On July 29, 2021, the Plaintiffs collectively sent a formal and confidential settlement demand which outlined a proposed framework for settlement of the Derivative Actions and included, *inter alia*, comprehensive proposed corporate governance reforms to address the alleged wrongdoing regarding the Company's accounting functions, controls, personnel, and methodologies used in the accounting itself, and prevent the failure of oversight.

On August 25, 2021, the Defendants responded by letter to the Plaintiffs' July 29, 2021 settlement demand.  Defendants agreed, in whole or in part, to several measures proposed by the Plaintiffs.  Following receipt of the Defendants' August 25, 2021 letter, the Plaintiffs requested additional documents relating to the work performed by HCSG's independent consultant, CFGI, which Defendants provided on September 22, 2021.

Then, on October 8, 2021, the Settling Parties agreed to proceed to a mediation to be overseen by the Mediator, who has extensive experience mediating complex stockholder disputes similar to the Derivative Actions.  After inquiry by Plaintiffs regarding the nature of certain corporate governance reforms undertaken by the Company, Defendants provided Plaintiffs with additional documents on November 8, 2021.  Thereafter, Plaintiffs submitted their settlement demand to the Mediator and Defendants submitted a position statement.

On November 17, 2021, counsel for the Plaintiffs and Defendants attended the mediation. By the conclusion of the mediation, the Settling Parties were able to reach an agreement in principle regarding the material substantive terms of a settlement, including corporate governance reforms.  Once the Settling Parties reached an arm's-length settlement agreement, and under the

continued oversight of the Mediator, the Settling Parties were able to reach an agreement as to the attorneys' fees and expenses to be paid to Plaintiffs' Counsel.  Specifically, the Settling Parties agreed that HCSG's insurer shall pay or cause to be paid to Plaintiffs' Counsel the Fee and Expense Amount, subject to Court approval.

As set forth below, the Settlement is fair, reasonable, and adequate, and in the best interests of HCSG and Current HCSG Shareholders.  In addition, the agreed-to Fee and Expense Amount is fair and reasonable.

## IV.    TERMS OF THE SETTLEMENT

As a result of the pre-suit demands, complaints, and prosecution and settlement of the Actions, HCSG and Current HCSG Shareholders will benefit from a comprehensive set of corporate governance measures that directly address the alleged Board- and management-level oversight lapses at issue in the Derivative Actions.  As reflected in the Stipulation, HCSG will implement and maintain, for a minimum of three (3) years, the Corporate Governance Reforms.

As discussed in more detail below, the Corporate Governance Reforms represent a material and substantial improvement in HCSG's corporate governance structure and will help to prevent a recurrence of the wrongdoing alleged in the Actions.  Courts have recognized that corporate governance reforms such as these "provide valuable benefits to public companies."  *In re NVIDIA Corp. Derivative Litig.*, No.06-06110, 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008 (quoting *Cohn v. Nelson*, 375 F. Supp. 2d 844, 853 (E.D. Mo. 2005); *accord Unite Nat. Ret. Fund v. Watts*, No. Civ.A. 04CV3603DMC, 2005 WL 2877899, at *5 (D.N.J. Oct. 28, 2005) (finding settlement appropriate due to "the great benefit conferred upon [the company] as a result of the new corporate governance principles provided for in the settlement agreement" that "will serve to prevent and protect [the company] from the reoccurrence of certain alleged wrongdoings").

## V.     THE SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.     Applicable Legal Standards

Settlement and dismissal of stockholder derivative actions requires Court approval. *See* Fed. R. Civ. P. 23.1(c).[9]  The "general practice" in shareholder derivative suits is that the parties submit the settlement to the Court for its approval together with a request for a hearing on its propriety. *See* Wright, Miller & Kane, *supra*, §1839.  On preliminary approval, the Court "make[s] a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the … proposed settlement, and date of the fairness hearing." *Manual for Complex Litig.* (Fourth) §21.632 (2004); *see also In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 1068807, at *1 (E.D. Pa. May 11, 2004).  In determining whether preliminary approval is warranted, the Court is required to determine whether the proposed Settlement discloses grounds to doubt its fairness or other obvious deficiencies and whether it appears to fall within the range of possible approval. *See Thomas v. NCO Fin. Sys., Inc.*, No. CIV.A. 00-5118, 2002 WL 1773035, at *5 (E.D. Pa. July 31, 2002) (citing *In re Prudential Sec. Inc. Ltd. P'hips Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995)); *Tenuto v. Transworld Sys., Inc.*, No. CIV.A. 99-4228, 2001 WL 1347235, at *1 (E.D. Pa. Oct. 31, 2001); *see also Manual for Complex Litig.* (Fourth) § 23.14 (2004).  The Court is not required on preliminary approval to make a final determination that the proposed Settlement is fair and reasonable.  Preliminary approval is usually granted unless the settlement is "obviously deficient."

---

[9]     "The role of the court and the criteria considered in evaluating the adequacy and fairness of a derivative settlement are substantially the same as in the class action."  7 Alba Conte & Herbert Newberg, Newberg on Class Actions § 22.110, at 476 (4th ed. 2002).  Accordingly, in determining the standards applicable to approval of a derivative settlement, "cases involving dismissal or compromise under Rule 23(e) of non-derivative class actions . . . are relevant by analogy."  *See* 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 3D §1839, at 195 (2007).

*Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 438 (E.D. Pa. 2008) (internal citation omitted).

### B. The Settlement Is Within the Range of Possible Final Approval

The Settlement was reached through adversarial, arm's-length negotiations by experienced counsel and, thus, is presumptively fair and reasonable. The Settlement falls within the range of reasonableness for purposes of preliminary approval because it provides substantial benefits to HCSG and its stockholders, particularly when balanced against the risks, expense, and uncertainty of continued litigation. Accordingly, the Settlement should be preliminarily approved.

### 1. The Settlement Is the Product of Arm's Length Negotiations and Is Therefore Presumptively Fair and Reasonable

As stated in *In re Automotive Refinishing*, the preliminary approval analysis "often focuses on whether the settlement is the product of arms-length negotiations." *In re Auto. Refinishing Paint Antitrust Litigation*, 2004 WL 1068807, at *2 (internal citation and quotation omitted); *see also Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007) (same). "[W]hen a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 350-351 (N.D. Ohio 2001). Here, the Settling Parties reached the proposed Settlement terms through adversarial arm's length negotiations by experienced counsel with the assistance of the highly skilled Mediator, and the Settlement represents a hard-fought, substantial recovery for HCSG. Courts have recognized that an experienced mediator's involvement in settlement negotiations supports a settlement's fairness and approval. *See e.g., In re Fab Universal Corp. S'holder Deriv. Litig.*, 148 F. Supp. 3d 277, 280 (S.D.N.Y. 2015) (finding that the proposed settlement was the result of arms-length negotiations where the parties were represented by experienced counsel and settlement "was the product of extensive formal mediation aided by a neutral JAMs mediator, hallmarks of a non-collusive, arm's-length settlement process.").

The Settling Parties' negotiations began in mid-2021 and continued until the Settlement was finally reached in November 2021, which included numerous communications between counsel for all Settling Parties and culminating in a mediation.  Furthermore, the Settling Parties did not begin negotiating the amount of fees and expenses for Plaintiffs' Counsel until after reaching an agreement in principle regarding the material substantive terms of the Settlement, including the Corporate Governance Reforms.  These facts weigh in favor of preliminary approval of the proposed Settlement.  *See, e.g.*, *Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 473 (E.D. Pa. 2007) (settlement preliminarily approved where the parties engaged in "hard-fought and lengthy negotiation[s]"); *In re Auto. Refinishing Paint Antitrust Litig.*, 2004 WL 1068807, at *2 (preliminary approval granted where settlement was reached after extensive arm's length negotiation between very experienced and competent counsel for the settling parties); *In re Chickie's & Pete's Wage & Hour Litig.*, No. 12-6820, 2014 WL 911718, at *4 (E.D. Pa. Mar. 7, 2014) (recognizing that the fact that attorneys' fees were not negotiated until after the material terms of the settlement had been agreed upon further demonstrated the fairness of the settlement because "the amount of attorneys' fees could not have affected the amount of [the] recovery").

The Settling Parties have each independently considered the Settlement and all agree that it is in the best interests of HCSG and Current HCSG Stockholders.  Significant weight should be attributed to the belief of experienced counsel that a settlement is in the best interest of those affected by the Settlement.  *See Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

### 2.    The Settlement Confers Substantial and Material Benefits on HCSG

The Third Circuit has held that the principal factor in determining the fairness of a derivative settlement is "the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest."  *Shlensky v. Dorsey*, 574 F.2d 131, 147 (3d Cir. 1978).

The Third Circuit has further acknowledged that corporate governance reforms that "are designed to prevent a reoccurrence of the alleged wrongdoings" provide "immediate and substantial benefits for all parties." *Unite Nat. Ret. Fund*, 2005 WL 2877899, at *1, *4 (approving derivative corporate governance settlement).

Here, as outlined in detail in the Stipulation, HCSG has agreed that the institution, prosecution, and settlement of the Derivative Actions substantially contributed to its decision to adopt, implement, and maintain the Corporate Governance Reforms. The benefits conferred upon HCSG and its stockholders as a result of the Settlement are both immediate and long-lasting and are specifically designed to protect HCSG and its reputation for its own benefit and for the benefit of its shareholders. The Corporate Governance Reforms will help bring HCSG's internal procedures into compliance with best practices, provide increased value to the Company, significantly enhance long-term shareholder value, and protect HCSG and its shareholders from a repeat of the recent damaging events. Sound and effective corporate governance confers real economic value to publicly traded companies and their shareholders by empowering boards to exercise effective oversight, thereby improving management and producing better operational and risk management decisions, which correlate with higher company profits. Additionally, improved corporate governance and board oversight of core operations substantially reduce the risks of costly regulatory and legal exposure and help restore and preserve the Company's credibility with investors. Courts have long recognized that corporate governance reforms like those provided for in the Settlement here confer a substantial benefit on the corporation. *See, e.g.*, *Mills v. Elec. AutoLite Co.*, 396 U.S. 375, 395-96, 90 S. Ct. 616, 24 L. Ed. 2d 593 (1970) (corporation receives "substantial benefit" from a derivative suit and such actions involve "corporate therapeutics" and thus furnish a benefit to all shareholders); *Maher v. Zapata Corp.*, 714 F.2d 436, 461 (5th Cir.

1983) ("effects of the suit on the functioning of the corporation may have a substantially greater economic impact on it, both long- and short-term, than the dollar amount of any [potential] judgment"); *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1311 (3d Cir. 1993) (citing Fourth, Fifth, and Sixth Circuit Courts of Appeal precedent that recognize that corporate governance reforms, in general, provide valuable benefits to corporations and their public stockholders).

The Settlement's terms confer a substantial benefit on HCSG and demonstrate that the Court should preliminarily approve the Settlement.

> **3.     The Settlement Appropriately Balances the Significant Risks of Continued Litigation with the Benefits Conferred Upon HCSG and Its Stockholders**

The uncertainties and vagaries of the continued litigation of the Derivative Actions further demonstrate that the proposed Settlement is within the range of final approval. Although Plaintiffs believed and continue to believe that the Derivative Actions have substantial merit, there exist significant risks in continuing to prosecute the Derivative Actions. For example, while HCSG settled the Securities Class Action for a substantial sum, a showing of ultimate liability was by no means a foregone conclusion in the Derivative Actions. And even if Plaintiffs were to prevail at the pleading stage, which is no small feat in shareholder derivative litigation, let alone in cases alleging wrongful pre-suit demand refusal, continued litigation would involve costly discovery and substantial risks. Given the obstacles and uncertainties inherent in this complex derivative litigation, the Settlement guarantees immediate, substantial, and lasting benefits, and is unquestionably superior to the very real risk that HCSG might recover nothing after years of costly litigation.

Continued litigation would also be extremely complex, costly, and of substantial duration. Discovery would need to be completed, depositions would need to be taken, experts would need to be designated, and expert discovery would be conducted. HCSG and the Individual Defendants

14

would invariably submit and file motions for summary judgment, which would have to be briefed and opposed by Plaintiffs, as well as argued. Additionally, a trial would have to be held. Even if liability was established, the amount of recoverable damages would still have posed significant issues and would have been subject to further litigation. Thus, the substantial benefits and value conferred on HCSG, when compared to the significant expense and uncertainty of continued litigation, support preliminary approval of the Settlement. *See Maher*, 714 F.2d at 466 (derivative settlement approved where "the parties' conclusion that any possible benefit to [the company] from pursuing the causes of action would be more than offset by the additional cost of litigation was based on an intelligent and prudent evaluation of their case").[10]

It is also clear that even a victory at trial is no guarantee that any favorable judgment would ultimately be sustained on appeal or by the trial court. For example, in *In re Apollo Grp., Inc. Sec. Litig.*, No. CV 04-2147, 2008 WL 3072731, at *6 (D. Ariz. Aug. 4, 2008), *rev'd and remanded*, No. 08-16971, 2010 WL 5927988 (9th Cir. June 23, 2010), the trial court, on a motion for judgment as a matter of law, overturned a jury verdict of $277 million in favor of stockholders based on insufficient evidence presented at trial to establish loss causation. The jury verdict was later reinstated on appeal but only after two more years of litigation and legal expenses for the parties. *See In re Apollo Grp., Inc. Sec. Litig.*, 2010 WL 5927988, at *1. Add these post-trial and appellate risks to the difficulty and unpredictability of a lengthy and complex trial, and the immediate benefits of the Settlement become clearer and more apparent.

It is for these reasons that courts recognize that derivative litigation is "notoriously

---

[10]     *Maher* recognized that the avoidance of further litigation expenses "both monetarily in the form of litigation fees and expenses, and non-monetarily in the form of disruption and distraction of management, and threatened impairment of the Corporation's credit and goodwill, are important and valid reasons for seeking a settlement, and may warrant its approval." *Maher*, 714 F.2d at 467.

unpredictable," and therefore settlements of stockholder derivative actions and other complex litigation are "particularly favored" and are not to be lightly rejected by the courts.  *See Maher*, 714 F.2d at 455; *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."); *In re Sch. Asbestos Litig.*, 921 F.2d 1330, 1333 (3d Cir. 1990) (courts encourage settlement of complex litigation that "otherwise could linger for years").  This factor weighs in favor of preliminary approval of the Settlement.

## VI.    THE NOTICE PROCEDURES OUTLINED IN THE STIPULATION ARE REASONABLE

The purpose of providing stockholders notice of a proposed settlement is to "apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Bradburn Parent Teacher Store, Inc. v. 3M (Minnesota Mining & Mfg. Co.)*, 513 F. Supp. 2d 322, 328 (E.D. Pa. 2007).  Here, the Settling Parties propose that within ten (10) business days of the Court's entry of an order preliminarily approving the Settlement, notice shall be given by the following methods: (i) HCSG shall file a Current Report on SEC Form 8-K which shall include as exhibits the Notice itself and the Stipulation with its attached exhibits; and (ii) HCSG shall post the Notice, together with this Stipulation, on the "Investors" section of its website. Defendants shall pay for all costs associated with this notice program or any other form and manner of notice required by the Court.

The Notice (attached as Exhibit B to the Stipulation) adequately informs Current HCSG Stockholders of, *inter alia*: (1) the terms of the Settlement; (2) the date, time, and location of the

Settlement Hearing; (3) the Settling Parties' principal contentions; (4) the underlying reasons for the Settlement; and (5) the deadline and procedure for objecting to the Settlement and appearing at the Settlement Hearing (and while making clear to Current HCSG Stockholders that if they fail to comply with the procedures and deadline for filing objections, they will lose any opportunity to object to any aspect of the Settlement).

Plaintiffs respectfully submit that the proposed forms of notice fully satisfy due process requirements because they will fairly and reasonably apprise Current HCSG Stockholders of the essential terms of the Settlement and afford them an opportunity to present any objections thereto. Accordingly, the Court should approve the Notice and the manner of dissemination the Settling Parties propose.

## VII.   PROPOSED SCHEDULE

For the Court's consideration, Plaintiffs offer the following proposed schedule for the necessary events leading up to and including the Settlement Hearing.  If this schedule is not convenient for the Court, Plaintiffs respectfully request that the Court utilize similar time intervals for the events in amending the proposed Preliminary Approval Order.

| EVENT | DEADLINE |
| --- | --- |
| Deadline for: (i) HCSG to file a Form 8-K with the Notice and Stipulation as exhibits; (ii) HCSG to post the Notice, together with this Stipulation, on the "Investors" section of its website | Not later than ten (10) business days following the entry of the Preliminary Approval Order |
| Deadline to file documentation in support of the Settlement with the Court | At least twenty-one (21) calendar days prior to the Settlement Hearing |
| Deadline to file any objections to the Settlement with the Court | At least fourteen (14) calendar days prior to the Settlement Hearing |
| Deadline to file reply papers in support of the Settlement, if any, with the Court | At least seven (7) calendar days prior to the Settlement Hearing |

| | |
|---|---|
| Settlement Hearing date | Forty-five (45) calendar days after Notice is given, or otherwise at the Court's convenience |

## VIII.   CONCLUSION

The Settlement requires HCSG to implement and maintain the Corporate Governance Reforms which meaningfully address the issues Plaintiffs raised concerning the alleged manipulation of HCSG's EPS.  The Settlement is an excellent resolution for HCSG of litigation of substantial complexity and cost.  Plaintiffs respectfully request that the Court preliminarily approve the Settlement, direct the issuance of the Notice, and schedule the Settlement Hearing to consider final approval of the Settlement.

Dated: April 6, 2022

Respectfully submitted,

By: */s/Joshua H. Grabar*
Joshua H. Grabar (PA Bar No. 82525)
**GRABAR LAW OFFICE**
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (267) 507-6085
Facsimile: (267) 507-6048
Email: jgrabar@grabarlaw.com

Gina M. Serra
Seth D. Rigrodsky
Timothy J. MacFall
Vincent A. Licata
**RIGRODSKY LAW, P.A.**
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
Telephone: (516) 683-3516
Facsimile: (302) 654-7530
Email: sdr@rl-legal.com
tjm@rl-legal.com
vl@rl-legal.com

*Counsel for Plaintiff Portia E. McCollum*

18

By: */s/ Jonathan M. Zimmerman*
Jonathan M. Zimmerman (PA Bar No. 322668)
Scott R. Jacobsen
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
Email: jzimmerman@scott-scott.com
sjacobsen@scott-scott.com

Geoffrey M. Johnson
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
12434 Cedar Road, Suite 12
Cleveland Heights, OH 44106
Telephone: (216) 229-6088
Facsimile:  (860) 537-4432
Email: gjohnson@scott-scott.com

*Counsel for Plaintiffs Maria and Clemente Batan*

19