# EXHIBIT A

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE HEALTHCARE SERVICES GROUP, INC. DERIVATIVE LITIGATION | Case No. 2:20-cv-03426-KSM |

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement (the "Stipulation"), dated April 6, 2022, is made and entered into by and among the following Settling Parties[1], each by and through their respective counsel: (i) Portia E. McCollum, Maria Batan, Clemente Batan, David J. Reisman, Liisa Ivary, and Arnold Berezin ("Plaintiffs"); (ii) nominal defendant Healthcare Services Group, Inc. ("HCSG" or the "Company"); and (iii) Theodore Wahl, John C. Shea, Michael E. McBryan, Daniel P. McCartney, Matthew J. McKee, Jude Visconto, John M. Briggs, Diane S. Casey, Robert L. Frome, John J. McFadden, Dino D. Ottaviano, Daniel Castagnino, Robert J. Moss, Laura Grant, Andrew W. Kush, David Hurlock, Jason J. Bundick, Bryan D. McCartney, Kevin P. McCartney, Stephen Newns, and James R. Bleming (the "Individual Defendants" and together with HCSG, the "Settling Defendants"), all of whom are current or former members of HCSG's Board of Directors (the "Board") and/or current or former senior officers of HCSG.  This Stipulation, subject to the approval of the United States District Court for the Eastern District of Pennsylvania (the "Federal Court"), is intended by the Settling Parties to fully, finally, and forever compromise, resolve, discharge, and settle the Derivative Matters and the Released Claims and to result in the complete dismissal of the Derivative Actions with prejudice, upon the terms and subject to the conditions set forth herein.

---

[1]     All capitalized terms not otherwise defined are defined in section IV.1.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

In these Derivative Matters, Plaintiffs, on behalf of HCSG, alleged the following misconduct:  breach of fiduciary duties based upon the manipulation of the Company's publicly reported earnings-per-share ("EPS"), the concealment of a subpoena from the U.S. Securities and Exchange Commission ("SEC"), and the maintenance of deficient internal controls.  Plaintiffs alleged that the misconduct caused the Company significant damages.  As set forth in greater detail in Section III, *infra*, the Settling Defendants dispute and deny the allegations asserted in the Derivative Matters.

### A.      Procedural History

On March 22, 2019, a securities fraud class action was filed against the Company in Federal Court on behalf of investors who purchased HCSG stock between April 8, 2014, and March 4, 2019 (the "Class Period"), captioned *Koch v. Healthcare Services Group, Inc.*, No. 2:19-cv-01227 (E.D. Pa.) (the "Securities Action").  The plaintiffs in the Securities Action alleged that certain of the Settling Defendants caused HCSG to make false and misleading statements during the Class Period concerning the Company's EPS, related SEC investigations, and the Company's internal controls, in violation of the Securities Exchange Act of 1934.  Defendants in the Securities Action disputed and denied these allegations.

On April 24, 2019, plaintiff Portia E. McCollum sent a demand letter pursuant to 15 PA Cons. Stat. §1781(a)(1) demanding that the Board take action to redress, among other things, the wrongdoing alleged in the Securities Action.  On October 21, 2019, November 3, 2020, and December 2, 2020, plaintiffs Maria and Clemente Batan, plaintiff Arnold Berezin, and plaintiff David Reisman, respectively, sent demand letters to the Board further demanding that the Board take action to redress the misconduct alleged in the Securities Action.

On July 13, 2020, plaintiff Portia E. McCollum filed a shareholder derivative action on behalf of HCSG in Federal Court under the caption *McCollum v. Wahl, et al.*, No. 2:20-cv-03426 (E.D. Pa.).  On June 24, 2021, plaintiffs Maria and Clemente Batan filed a substantially similar shareholder derivative complaint in Federal Court on behalf of HCSG under the caption, *Batan, et al. v. Wahl, et al.*, No. 2:21-cv-02810 (E.D. Pa.).  The Federal Court subsequently consolidated these lawsuits on June 30, 2021, under the caption *In re Healthcare Services Group, Inc. Derivative Litigation*, No. 2:20-cv-03426-KSM (the "Federal Action"), and appointed Rigrodsky Law, P.A. and Scott+Scott Attorneys at Law LLP to serve as Co-Lead Counsel for the plaintiffs in the Federal Action.

On June 21, 2021, plaintiffs David J. Reisman and Liisa Ivary filed a shareholder derivative action on behalf of HCSG in the Court of Common Pleas of Bucks County, Pennsylvania (the "State Court") under the caption *Reisman, et al. v. Wahl, et al.*, No. 2021-03255 (Bucks County Ct. Com. Pl.).  On June 24, 2021, plaintiff Arnold Berezin filed a substantially similar shareholder derivative complaint in State Court on behalf of HCSG under the caption *Berezin, et al. v. Wahl, et al.*, No. 2021-03366 (Bucks County Ct. Com. Pl.).  The State Court subsequently consolidated these two lawsuits on July 6, 2021, under the caption *In re Healthcare Services Group, Inc. Derivative Litigation*, No. 2021-03255 (the "State Action") and appointed Johnson Fistel LLP and Shuman, Glenn & Stecker to serve as Co-Lead Counsel for the plaintiffs in the State Action.

The consolidated Federal Action and consolidated State Action are referred to herein collectively as the "Derivative Actions."

The Derivative Actions asserted claims against the Settling Defendants for breaches of fiduciary duties, unjust enrichment, abuse of control, and corporate waste in connection with the alleged false and misleading statements described herein and purported deficiencies in the

Company's internal controls.  The Board formed a Special Litigation Committee (the "SLC"), pursuant to 15 Pa. C.S.A. §1783, to investigate the claims asserted against the Settling Defendants in the Demands and Derivative Actions (the "Derivative Matters").

Thereafter, the Settling Parties agreed to stay the Derivative Actions in their entirety until the SLC concluded its investigation.

### B.    Settlement Efforts in the Derivative Actions

On or around June 18, 2021, the Settling Parties agreed to engage in settlement discussions. The Settling Parties further agreed that the SLC would pause its investigative activities while settlement discussions were taking place.   On July 29, 2021, Plaintiffs provided Settling Defendants with an initial joint settlement demand (the "Settlement Demand"), which included a thorough corporate governance reform proposal.  On August 25, 2021, the Settling Defendants responded to the Settlement Demand.  As part of the settlement discussions, Settling Defendants produced documents requested by Plaintiffs on September 22, 2021 and November 8, 2021. Settlement Discussions from June 2021 through the present date included lengthy negotiations over the course of dozens of verbal and written exchanges.

On November 17, 2021, the Settling Parties participated in an all-day mediation before an experienced and nationally-recognized mediator, Robert A. Meyer of JAMS (the "Mediator"), and reached a settlement in principle regarding the substantive conditions of the settlement, the terms of which are reflected in Exhibit A to this Stipulation (the "Settlement").

Subsequent to agreement on the substantive terms of the Settlement, the Settling Parties, with the assistance of the Mediator, separately negotiated in good faith and on an informed basis the amount of attorneys' fees to be paid to Plaintiffs' Counsel in recognition of the substantial benefits Plaintiffs' Counsel's efforts and the Settlement have conferred on HCSG and its shareholders.  All of these negotiations were conducted at arm's-length by sophisticated counsel.

In addition to an agreement on corporate governance reforms, negotiations during the November 17, 2021 mediation session culminated in a Mediator's proposal which was accepted by all of the Settling Parties.  Specifically, the Settling Parties agreed that HCSG's insurer shall pay or cause to be paid to Plaintiffs' Counsel one million dollars ($1,000,000.00) for attorneys' fees and reimbursement of expenses (the "Fee and Expense Award"), subject to Court approval.

The Board has reviewed the allegations in the Derivative Matters and the Settlement terms and, in a good faith exercise of its independent business judgment, determined that the Settlement and each of its terms, including the Fee and Expense Award, as set forth in this Stipulation, is in the best interests of HCSG and its shareholders.

## II.   PLAINTIFFS' COUNSEL'S INVESTIGATION AND RESEARCH, PLAINTIFFS' CLAIMS, AND THE BENEFIT OF SETTLEMENT

Plaintiffs' Counsel conducted investigations relating to the claims and the underlying events alleged in the Derivative Matters, including, but not limited to: (1) reviewing and analyzing the Company's public filings with the SEC, press releases, announcements, transcripts of investor conference calls, and news articles; (2) reviewing and analyzing the allegations and defenses contained in the Securities Action; (3) researching and drafting the Demands; (4) researching and drafting the complaints filed in the Derivative Actions; (5) researching applicable law with respect to the claims in the Derivative Actions and the potential defenses thereto; (6) researching corporate governance issues and oversight best practices generally and among HCSG's peer corporations; (7) compiling and analyzing data bearing on damages and Board and executive compensation; (8) evaluating additional non-public documents produced by the Settling Defendants to Plaintiffs in the context of settlement; (9) preparing an extensive settlement demand; (10) preparing for and attending the November 17, 2021 mediation; and (11) engaging in extensive settlement discussions with Defendants' Counsel.

Plaintiffs' Counsel believe that the claims asserted in the Derivative Matters have merit and that Plaintiffs' investigation supports the claims asserted.  Without conceding the merit of any of Settling Defendants' defenses or the lack of merit of any of Plaintiffs' own allegations, and in light of the benefits of the Settlement, as well as to avoid the potentially protracted time, expense, and uncertainty associated with continued litigation, including potential trials and appeals, Plaintiffs have concluded that it is desirable that the Derivative Matters be fully and finally settled and satisfied in the manner, and upon the terms and conditions, set forth in this Stipulation. Plaintiffs and Plaintiffs' Counsel recognize the significant risk, expense, and length of continued proceedings necessary to prosecute the Derivative Matters against the Settling Defendants through trials and possible appeals.  Plaintiffs' Counsel has also taken into account the uncertain outcome and the risk of any litigation, especially complex litigation such as the Derivative Actions, as well as the difficulties and delays inherent in such litigation.

Based on Plaintiffs' Counsel's thorough review and analysis of the relevant facts, allegations, defenses, and controlling legal principles, Plaintiffs and Plaintiffs' Counsel believe that the Settlement set forth in this Stipulation is fair, reasonable, and adequate; confers substantial benefits upon HCSG and its stockholders; and would serve the best interests of HCSG and its stockholders.  Plaintiffs and Plaintiffs' Counsel also believe that the corporate governance reforms set forth in Exhibit A are carefully crafted to prevent or deter potential future breaches of fiduciary duty similar to those alleged in the Derivative Matters.

## III.    DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

The Settling Defendants enter into this Stipulation without in any way acknowledging any fault, liability, or wrongdoing of any kind.  The Settling Defendants have denied and continue to deny vigorously each and all of the claims and contentions alleged in the Derivative Matters and assert that all claims and contentions alleged in the Derivative Matters are completely without merit.

The Settling Defendants assert that at all relevant times, they acted in good faith and in a manner they reasonably believed to be in the best interests of the Company and its stockholders. The Settling Defendants are entering into the Stipulation solely because the Settlement would eliminate the burden, expense, and uncertainties inherent in further litigation. The Settling Defendants believe that the settlement of the Derivative Matters on the terms provided for in this Stipulation is fair, reasonable, and adequate based upon the terms and procedures outlined herein.

HCSG acknowledges that the initiation and prosecution of the Derivative Matters and discussions with Plaintiffs' Counsel were a material cause of the adoption and continuation of the governance reforms described in Exhibit A, and that such reforms confer a substantive benefit on the Company.

As set forth in additional detail in Paragraph 8.4, neither this Stipulation, nor any of its terms or provisions, nor entry of the Final Order and Judgment, nor any document or exhibit referred to in or attached to this Stipulation, nor any action taken to carry out this Stipulation, is, may be construed as, or may be used as evidence of the validity of any of the Released Claims, as described below, or an admission by or against the Settling Defendants of any fault, wrongdoing, or concession of liability.

Neither this Stipulation nor the attached exhibits shall be offered or received into evidence in any action or proceeding in any court or other tribunal for any purpose whatsoever other than to enforce the provisions of this Stipulation, except that this Stipulation and the attached exhibits may be filed as evidence of the Settlement or in any action against the Released Parties (defined below) to support a defense of *res judicata*, collateral estoppel, release, or other theory of claim or issue preclusion or similar defense.

**IV.    TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT**

Plaintiffs, derivatively on behalf of HCSG, and the Settling Defendants, by and through their respective counsel or attorneys of record, hereby stipulate and agree that, subject to approval by the Federal Court, in consideration of the benefits flowing to the Settling Parties hereto the sufficiency of which are hereby acknowledged, the Derivative Matters and all of the Released Claims shall be fully, finally, and forever satisfied, compromised, settled, released, discharged, and dismissed with prejudice, upon the terms and subject to the conditions set forth herein as follows:

**1.    Definitions**

As used in this Stipulation, the following terms have the meanings specified below.  In the event of any inconsistency between any definition set forth below and any definition set forth in any document attached as an exhibit to this Stipulation, the definitions set forth below shall control.

1.1.    "Board" means the HCSG Board of Directors.

1.2.    "Claims" means, collectively, any and all claims, rights, demands, causes of action or liabilities of any kind, nature, and character (including, but not limited to, claims for damages, interest, attorneys' fees, expert or consulting fees, and any and all other costs, expenses, or liabilities whatsoever), whether based on federal, state, local, statutory, or common law or any other law, rule, or regulation, whether foreign or domestic, whether suspected or unsuspected, factual or legal, fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether individual or derivative in nature, including known or unknown Claims including, without limitation, Unknown Claims (as defined below).

1.3.    "Current HCSG Stockholders" means, for purposes of this Stipulation, any Persons (defined below) who owned HCSG common stock as of the Execution Date of this Stipulation and who continue to hold their HCSG common stock as of the date of the Settlement Hearing,

excluding the Individual Defendants, the officers and directors of HCSG, members of their immediate families, and their legal representatives, heirs, successors, or assigns, and any entity in which Individual Defendants have or had a controlling interest.

1.4.   "Defendants' Counsel" means Troutman Pepper Hamilton Sanders LLP, 3000 Two Logan Square, Philadelphia, Pennsylvania 19103.

1.5.   "Demands" means, collectively, the pre-suit demand letters from HCSG shareholders: (i) Maria Batan and Clemente Batan dated October 21, 2019, (ii) Chris Kilmer dated November 27, 2019, (iii) Greg Frownfelter dated April 23, 2020, (iv) Michael Shore dated June 30, 2020, (v) Arnold Berezin dated November 3, 2020, (vi) David Reisman dated December 2, 2020, (vii) Douglas Batdorf dated February 22, 2021, and (viii) Portia E. McCollum dated April 29, 2019.

1.6.   "Derivative Actions" means, collectively, the Federal Action and the State Action.

1.7.   "Derivative Matters" means, collectively, the Demands and Derivative Actions.

1.8.   "Effective Date" means the first date by which all of the events and conditions specified in ¶6.1 herein have been met and have occurred.

1.9.   "Execution Date" means the date this Stipulation has been signed by all of the signatories through their respective counsel.

1.10.   "Federal Action" means, collectively, the actions *McCollum v. Wahl, et al.*, Case No. 2:20-cv-03426 and *Batan, et al. v. Wahl, et al.*, Case No. 2:21-cv-02810 filed in Federal Court.

1.11.   "Federal Court" means the United States District Court for the Eastern District of Pennsylvania.

1.12.    "Fee and Expense Award" means the sum to be paid to Plaintiffs' Counsel for their attorneys' fees and expenses, as detailed in ¶¶5.1-5.2 of this Stipulation, subject to approval by the Federal Court.

1.13.    "Final" means the time when an order or judgment that has not been reversed, vacated, or modified in any way and is no longer subject to appellate review, either because of disposition on appeal and conclusion of the appellate process (including potential writ proceedings) or because of passage, without action, of time for seeking appellate or writ review. More specifically, it is that situation when (1) either no appeal or petition for review by writ has been filed and the time has passed for any notice of appeal or writ petition to be timely filed in the Derivative Actions; or (2) an appeal has been filed and the court of appeals has either affirmed the order or judgment or dismissed that appeal and the time for any reconsideration or further appellate review has passed; or (3) a higher court has granted further appellate review, and that court has either affirmed the underlying order or judgment or affirmed the court of appeals' decision affirming the order or judgment or dismissing the appeal or writ proceeding.

1.14.    "Governance Reforms" means the corporate governance reforms listed in Exhibit A to this Stipulation.

1.15.    "HCSG" or the "Company" means nominal defendant Healthcare Services Group, Inc., and includes all of its subsidiaries, predecessors, successors, affiliates, officers, directors, employees, attorneys, agents, and SLC members.

1.16.    "Individual Defendants" means, collectively: Theodore Wahl, John C. Shea, Michael E. McBryan, Daniel P. McCartney, Matthew J. McKee, Jude Visconto, John M. Briggs, Diane S. Casey, Robert L. Frome, John J. McFadden, Dino D. Ottaviano, Daniel Castagnino,

Robert J. Moss, Laura Grant, Andrew W. Kush, David Hurlock, Jason J. Bundick, Bryan D. McCartney, Kevin P. McCartney, Stephen Newns, and James R. Bleming.

1.17.   "Judgment" means the final order and judgment to be rendered by the Federal Court, substantially in the form attached hereto as Exhibit D.

1.18.   "Notice to Current HCSG Stockholders" or "Notice" means the Notice to Current HCSG Stockholders, substantially in the form of Exhibit B attached hereto.

1.19.   "Person(s)" means an individual, corporation, limited liability company, professional corporation, partnership, limited partnership, limited liability partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their spouses, heirs, predecessors, successors, administrators, parents, subsidiaries, affiliates, representatives, or assignees.

1.20.   "Plaintiffs" means Portia E. McCollum, Maria Batan, Clemente Batan, David J. Reisman, Liisa Ivary, and Arnold Berezin.

1.21.   "Plaintiffs' Counsel" means: (i) Rigrodsky Law P.A., 825 East Gate Boulevard, Suite 300 Garden City, NY 11530, (ii) Scott+Scott Attorneys at Law LLP, The Helmsley Building, 230 Park Ave, 17th Floor, New York, NY 1016, (iii) The Weiser Law Firm, P.C., Four Tower Bridge 200 Barr Harbor Drive, Suite 400, West Conshohocken, PA 19428, (iv) Johnson Fistel, LLP, Murray House, 40 Powder Springs Street, Marietta, GA 30064, and (v) Shuman, Glenn & Stecker, 600 17th Street, Ste. 2800 South, Denver, CO 80202.

1.22.   "Preliminary Approval Order" means the Order to be entered by the Federal Court, substantially in the form of Exhibit C attached hereto, including, *inter alia*, preliminarily approving the terms and conditions of the Settlement as set forth in this Stipulation, directing that notice be

provided to Current HCSG Stockholders, and scheduling a Settlement Hearing to consider whether the Settlement and Fee and Expense Award should be finally approved.

1.23.   "Related Persons" means each and all of a Person's past, present, or future family members, spouses, domestic partners, parents and parent entities, associates, affiliates, divisions, subsidiaries, and each and all of their respective past, present, or future officers, directors, stockholders, owners, members, representatives, employees, attorneys, accountants, financial or investment advisors, custodians, consultants, underwriters, investment banks or bankers, commercial bankers, insurers, reinsurers, excess insurers, co-insurers, advisors, principals, agents, heirs, executors, trustees, estates, beneficiaries, distributees, foundations, general or limited partners or partnerships, joint ventures, personal or legal representatives, administrators, or any other person or entity acting or purporting to act for or on behalf of any Person, and each of their respective predecessors, successors, and assigns.

1.24.   "Released Claims" means all Claims, including known and Unknown Claims, against any of the Released Parties that (i) were asserted or could have been asserted derivatively in the Derivative Actions; (ii) would have been barred by *res judicata* had the Derivative Actions been fully litigated to final judgment; or (iii) that were, could have been, or could in the future be, asserted by Plaintiffs, Plaintiffs' Counsel, or any HCSG stockholder, Defendants, or Defendants' Counsel, in any forum or proceeding or otherwise against any of the Released Parties that concern, arise out of, or relate, directly or indirectly, in any way to any of the subject matters, allegations, transactions, events, facts, occurrences, disclosures, representations, statements, failures to act, or omissions alleged, involved, set forth, or referred to in any complaint or demand letter in the Derivative Matters including, but not limited to, claims for breach of fiduciary duties, unjust enrichment, abuse of control, contribution and indemnification, money damages, disgorgement,

any and all demands, actions, damages, claims, rights or causes of action, or liabilities whatsoever, including any claims arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement, or resolution of the Derivative Matters, provided, however, that nothing herein shall in any way release, waive, impair, or restrict the rights of any Settling Party to enforce the terms of this Settlement.

1.25.    "Released Parties" means, collectively, Plaintiffs and their Related Persons, including Plaintiffs' Counsel, Defendants and their Related Persons, including Defendants' Counsel and members of the SLC formed to investigate the Derivative Matters.

1.26.    "Settlement" means the settlement of the Derivative Matters as documented in this Stipulation.

1.27.    "Settling Defendants" means the Individual Defendants and HCSG.

1.28.    "Settlement Hearing" means a hearing by the Federal Court to review the adequacy, fairness, and reasonableness of the Settlement set forth in this Stipulation and to determine: (i) whether to enter the Judgment; and (ii) all other matters properly before the Federal Court.

1.29.    "Settling Parties" means, collectively, Plaintiffs (derivatively on behalf of HCSG), Plaintiffs' Counsel, any other HCSG stockholder, each of the Individual Defendants, and nominal defendant HCSG.

1.30.    "State Action" means collectively, the actions *Reisman, et al. v. Wahl, et al.*, Civil Action No. 2021-03255 and *Berezin, et al. v. Wahl, et al.*, Civil Action No. 2021-03366 filed in State Court.

1.31.    "State Court" means the Court of Common Pleas of Bucks County, Pennsylvania.

1.32.   "State Court Dismissal" means the signed Stipulated Order of Dismissal entered by the State Court or any other order entered by the State Court dismissing the Derivative Actions filed in State Court.

1.33.   "Stipulated Order of Dismissal" means the stipulated order to be entered by the State Court, substantially in the form of Exhibit E attached hereto.

1.34.   "Stipulation" means this Stipulation and Agreement of Settlement.

1.35.   "Unknown Claims" means any Released Claims which Plaintiffs, HCSG, or any Current HCSG Stockholder (claiming in the right of, or on behalf of, HCSG) does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Parties which, if known by him, her, or it, might have affected his, her, or its settlement with and release of the Released Parties, or might have affected his, her, or its decision not to object to this Settlement. Unknown Claims include those claims in which some or all of the facts comprising the claim may be suspected, or even undisclosed or hidden.  With respect to any and all Released Claims, Plaintiffs and HCSG stipulate and agree that, upon the Effective Date, they shall expressly waive, and every Current HCSG Stockholder shall be deemed to have, and by operation of the Final Judgment shall have, expressly waived the provisions, rights, and benefits of Cal. Civ. Code §1542, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Plaintiffs and HCSG shall expressly waive, and every Current HCSG Stockholder shall be deemed to have, and by operation of the Final Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States,

or principle of common law or foreign law, which is similar, comparable or equivalent in effect to Cal. Civ. Code §1542.  Plaintiffs, HCSG, and/or any Current HCSG Stockholder may hereafter discover facts in addition to or different from those which he, she, or it now knows or believes to be true with respect to the subject matter of the Released Claims, but Plaintiffs and HCSG shall expressly have, and every Current HCSG Stockholder shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, reckless, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts.  Plaintiffs and HCSG acknowledge, and every Current HCSG Stockholder shall be deemed by operation of the Final Judgment to have acknowledged, that the foregoing waivers were separately bargained for and a key element of the Settlement.

## 2.    Consideration

2.1.    The Board has agreed to adopt, or to maintain where already implemented, the corporate governance measures set forth in Exhibit A within ninety (90) business days after the Execution Date of this Stipulation.  HCSG shall maintain the Governance Reforms for at least three (3) years after the Execution Date of this Stipulation.

2.2.    HCSG acknowledges that the Board's decision to implement and/or continue these Governance Reforms is substantially due to the institution, prosecution, and settlement of the Derivative Matters.

2.3.    HCSG, Plaintiffs, and Plaintiffs' Counsel believe that the Governance Reforms have materially benefited or will materially benefit HCSG and Current HCSG Stockholders.

**3.    Procedure for Implementing the Settlement**

3.1.    Within five (5) business days after the Execution Date of this Stipulation, Plaintiffs shall submit this Stipulation, together with its exhibits, to the Federal Court and apply for entry of the Preliminary Approval Order substantially in the form of Exhibit C attached hereto, requesting, *inter alia*: (i) preliminary approval of the Settlement set forth in this Stipulation; (ii) approval of the method of providing notice of the proposed Settlement to Current HCSG Stockholders; (iii) approval of the form of notice substantially in the form of Exhibit B attached hereto; and (iv) a date for the Settlement Hearing.

3.2.    Within ten (10) business days after the Federal Court's entry of the Preliminary Approval Order, HCSG shall publish the Notice via a press release, shall file a Current Report on Form 8-K with the SEC attaching the Notice, and shall post the Notice, together with this Stipulation, on the "Investors" section of its website.  Settling Defendants agree to pay all costs associated with the Notice and publication thereof.  The Settling Parties believe the content of the Notice and the manner of the notice procedures set forth in this paragraph constitute adequate and reasonable notice to Current HCSG Stockholders pursuant to applicable law and due process.  If additional notice is required by the Federal Court, then the costs and administration of such additional notice will be borne by HCSG.

3.3.    At least ten (10) business days prior to the Settlement Hearing, Defendants' Counsel shall file with the Federal Court an appropriate affidavit or declaration with respect to filing and posting the Notice.

3.4.    Plaintiffs' Counsel shall request that the Federal Court hold the Settlement Hearing at least forty-five (45) calendar days after the deadline to provide the notice described in ¶3.2 above to Current HCSG Stockholders to approve the Settlement and the Fee and Expense Award.

3.5.    Pending the Federal Court's determination as to final approval of the Settlement, Plaintiffs and Plaintiffs' Counsel, and any Current HCSG Stockholders, derivatively on behalf of HCSG, are barred and enjoined from commencing, prosecuting, instigating, or in any way participating in the commencement or prosecution of any action asserting any Released Claims against any of the Released Parties in any court or tribunal, including, but not limited to, the Derivative Actions filed in the State Court.

3.6.    Within five (5) business days of the entry of Judgment by the Federal Court, Plaintiffs will submit a Stipulated Order of Dismissal to the State Court, substantially in the form of Exhibit E attached hereto.

**4.      Releases**

4.1.    Upon the Effective Date, HCSG, Plaintiffs, and each of HCSG's current and former stockholders, on behalf of themselves and their successors and assigns, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged the Released Claims against the Released Parties.  HCSG, Plaintiffs, and each of HCSG's current and former stockholders shall be deemed to have, and by operation of the Judgment shall have, covenanted not to sue any Released Party with respect to any Released Claims, and shall be permanently barred and enjoined from instituting, commencing, or prosecuting the Released Claims against the Released Parties except to (i) enforce the releases and other terms and conditions contained in this Stipulation and/or the Judgment entered pursuant thereto, and (ii) seek to obtain State Court Dismissal.

4.2.    Upon the Effective Date, each of the Released Parties shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged each and all of Plaintiffs and their beneficiaries, Plaintiffs' Counsel, HCSG, and all current and former HCSG stockholders (solely in their capacity as HCSG stockholders) from any and all Settling Defendants' Released Claims.  The Released Persons shall be deemed to have, and by operation of the Judgment shall have, covenanted not to sue Plaintiffs or their beneficiaries, Plaintiffs' Counsel, HCSG, or any current or former HCSG stockholders (solely in their capacity as HCSG stockholders) with respect to any Settling Defendants' Released Claims, and shall be permanently barred and enjoined from instituting, commencing, or prosecuting Settling Defendants' Released Claims against Plaintiffs and their beneficiaries, Plaintiffs' Counsel, HCSG, and all current and former HCSG stockholders except to enforce the releases and other terms and conditions contained in this Stipulation and/or the Judgment entered pursuant thereto.

4.3.    Nothing herein shall in any way release, waive, impair, or restrict the rights of any of the Settling Parties to enforce the terms of the Stipulation.

**5.      Plaintiffs' Counsels' Attorneys' Fees and Expenses**

5.1.    After negotiating the material substantive terms of the Settlement, Plaintiffs' Counsel and Defendants' Counsel, with the assistance of the Mediator, separately negotiated the attorneys' fees and expenses to be paid to Plaintiffs' Counsel based on the substantial benefits conferred upon HCSG and its stockholders by the Settlement.  In recognition of the Governance Reforms described in Exhibit A, Settling Defendants agree to cause their insurer to pay Plaintiffs' Counsels' the Fee and Expense Award, in the amount of one million dollars ($1,000,000.00), subject to the Federal Court's approval.  An agreement on the Fee and Expense Award was reached after the Settling Parties accepted the Mediator's proposal at the conclusion of the November 17,

2021 mediation session, after sophisticated, arms-length negotiations.  Such Fee and Expense Award shall cover all fees and expenses for all Plaintiffs' Counsel in the Derivative Matters. Plaintiffs' Counsel agree not to seek attorneys' fees and expenses relating to the Derivative Actions in State Court.

5.2.    The Company shall cause its insurer to pay the Fee and Expense Award approved by the Federal Court into an escrow account controlled by Scott+Scott Attorneys at Law LLP, on or before ten (10) business days after the later of: (i) the entry of the State Court Dismissal and (ii) the provision to Defendants of all information necessary to effectuate the payment of funds by check, including payee name, telephone number, mailing address, and e-mail contact information, as well as a signed W-9 reflecting the taxpayer identification number for the applicable escrow account.  Payment in accordance with the instructions provided by Plaintiffs' Counsel shall fully and completely discharge the obligations of Settling Defendants to pay any fees and expenses awarded by the Federal Court.  The Individual Defendants and their Related Persons shall have no obligation to pay or cause to be paid any fees, costs, expenses, taxes, interest, awards, or other amounts pursuant to this Stipulation and the Settlement set forth herein (including any portion of the Fee and Expense Award determined pursuant to ¶5.1).

5.3.    Scott+Scott Attorneys at Law LLP shall be solely responsible for the distribution of the Fee and Expense Award to Plaintiffs' Counsel.  Plaintiffs' Counsel will determine amongst themselves how the Fee and Expense Award is to be allocated.  Any dispute among Plaintiffs' Counsel concerning the allocation of the legal fees award shall be decided by Mr. Meyer, first as a mediator, and if that fails, as the arbitrator.  Mr. Meyer's determination shall be final and non-appealable.  The Settling Defendants and Defendants' Counsel will not object to such allocation or take any responsibility for such allocations.

5.4.     If the Stipulation is in any way canceled or terminated or if the Judgment is successfully collaterally attacked, then the payments to Plaintiffs' Counsel pursuant to ¶¶5.1- 5.2, and any and all interest accrued thereon since payment, shall be returned to HCSG's insurer within ten (10) business days of said event.  The return obligation set forth in this paragraph is the obligation of Scott+Scott Attorneys at Law LLP, which agrees to be subject to the jurisdiction of the Court for the purposes of enforcing this subparagraph.  Scott+Scott Attorneys at Law LLP reserves the right to seek contribution from other Plaintiffs' Counsel (and/or any other counsel that receives any portion of the Fee and Expense Award) for the purposes of enforcing this subparagraph, and all Plaintiffs' Counsel (and/or any other counsel) who receive any portion of the Fee and Expense Award shall subject themselves to the jurisdiction of the Court for enforcement of this subparagraph.

5.5.     Except as otherwise provided herein, each of the Settling Parties shall bear his, her, or its own costs and attorneys' fees.

5.6.     No order, or modification or reversal on appeal of any order, concerning the amount or allocation of the Fee and Expense Award, shall constitute grounds for cancellation or termination of this Stipulation or prevent the Judgment from becoming Final.

5.7.     Plaintiffs' Counsel may apply to the Court for service awards of up to one thousand five hundred dollars ($1,500.00) for each of the Plaintiffs ("Service Awards"), to be paid out of the Fee and Expense Award upon Court approval.  The Court's decision regarding whether to approve any requested Service Award, in whole or in part, shall have no effect on the Settlement. The Settling Defendants shall take no position with respect to the Service Awards.  The Settling Defendants shall not be liable for any portion of any Service Award approved by the Court.

**6.      Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

6.1.    The Effective Date of the Stipulation shall be conditioned on the occurrence of all the following events:

(a)      the approval of the Settlement and each of its terms by the Board;

(b)      the Federal Court has entered the Judgment;

(c)      the Judgment has become Final;

(d)      the State Court Dismissal has occurred; and,

(e)      the payment of the Fee and Expense Award has been made in accordance with ¶¶5.1-5.2 hereof.

6.2.    If any of the conditions specified in ¶ 6.1 is not met, then the Stipulation shall be canceled and terminated subject to ¶ 6.4, and the Settling Parties shall be restored to their respective positions in the Derivative Actions as of the date immediately preceding the Execution Date of this Stipulation, unless Plaintiffs' Counsel and Defendants' Counsel mutually agree in writing to proceed with the Stipulation.

6.3.    Each of the Settling Parties shall have the right to terminate the Settlement by providing written notice of their election to do so to all other Settling Parties within twenty (20) calendar days of the date on which: (i) the Federal Court refuses to approve this Stipulation, or the terms contained herein, in any material respect; (ii) the Preliminary Approval Order is not entered in substantially the form attached as Exhibit C hereto; (iii) the Judgment is not entered in substantially the form attached as Exhibit D hereto; (iv) the Judgment is reversed or substantially modified on appeal, reconsideration, or otherwise; (v) the State Court Dismissal does not occur, or (vi) the Effective Date of the Settlement cannot otherwise occur; except that such termination shall not be effective unless and until the terminating Settling Party has, within twenty (20)

calendar days of the date on which notice of the termination event has been provided to all other Settling Parties and attempted in good faith to confer with the other Settling Parties to attempt to remedy the issue.  Any order or proceeding relating to the Fee and Expense Award, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to cancel the Stipulation, allow for the termination of the Settlement, or affect or delay the finality of the Judgment approving the Settlement.

6.4.    In the event that the Stipulation is not approved by the Federal Court, or the Settlement is terminated for any reason, including pursuant to ¶6.3 above, the Settling Parties shall be restored to their respective positions as of the date immediately preceding the Execution Date of this Stipulation, and all negotiations, proceedings, documents prepared, and statements made in connection herewith shall be without prejudice to the Settling Parties, shall not be deemed or construed to be an admission by any of the Settling Parties of any act, matter, or proposition, and shall not be used in any manner for any purpose in any subsequent proceeding in the Derivative Actions or in any other action or proceeding.  In such event, the terms and provisions of the Stipulation, with the exception of ¶¶1.1-1.35, 5.5, 6.2, 8.3, 8.4, 8.5, 8.6, 8.8, 8.10, 8.12, 8.13, 8.14, 8.15, 8.16, and 8.17 herein, shall have no further force and effect with respect to the Settling Parties and shall not be used in the Derivative Actions or in any other proceeding for any purpose, and any judgment or orders entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*.

**7.    Bankruptcy**

7.1.    In the event any proceedings by or on behalf of HCSG, whether voluntary or involuntary, are initiated under any chapter of the United States Bankruptcy Code, including any act of receivership, asset seizure, or similar federal or state law action ("Bankruptcy Proceedings"),

the Settling Parties agree to use their reasonable best efforts to obtain all necessary orders, consents, releases, and approvals for effectuation of this Stipulation in a timely and expeditious manner.

7.2.    In the event of any Bankruptcy Proceedings by or on behalf of HCSG, the Settling Parties agree that all dates and deadlines set forth herein will be extended for such periods of time as are necessary to obtain necessary orders, consents, releases, and approvals from the Bankruptcy Court to carry out the terms and conditions of the Stipulation.

**8.    Miscellaneous Provisions**

8.1.    The Settling Parties: (i) acknowledge that it is their intent to consummate this Stipulation; and (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation.

8.2.    The Settling Parties agree that the terms of the Settlement were negotiated in good faith and at arm's-length by the Settling Parties and reflect a settlement that was reached voluntarily based upon adequate information and after consultation with competent legal counsel. The Settling Parties agree that each has complied fully with the applicable requirements of Rule 11 of the Federal Rules of Civil Procedure and all other similar rules of professional conduct.  The Settling Parties shall not assert any claims of any violation or take the position that the litigation was brought or defended in bad faith or in violation of Rule 11 of the Federal Rules of Civil Procedure and all other similar rules of professional conduct.

8.3.    Except as expressly permitted by this Settlement or by order of the Federal Court or State Court, Plaintiffs' Counsel agrees not to make any public statements or statements to the media (whether or not for attribution) relating to the Fee and Expense Award.

8.4.    Neither the Stipulation (including any exhibits attached hereto) nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (i) is or may be deemed to be, or may be offered, attempted to be offered, or used in any way against the Released Parties as a presumption, a concession or an admission of, or evidence of, the validity, or lack thereof, of any of the Released Claims, or of any fault, wrongdoing, or liability of any of the Released Parties; or (ii) is or may be deemed to be, or may be offered, attempted to be offered, or used in any way against the Released Parties as a presumption, a concession or an admission of, or evidence of, any fault, omission, wrongdoing, or liability of any of the Released Parties in any arbitration proceeding or other civil, criminal, or administrative action or proceeding in any court, administrative agency, or other tribunal.  The Settling Parties and Released Parties may file the Stipulation, the Judgment, and/or the State Court Dismissal in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

8.5.    The exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

8.6.    The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all the Settling Parties or their respective successors-in-interest and with Court approval.  After prior notice to the Court, but without further order of the Court, the Settling Parties may agree to reasonable extensions of time to carry out any provisions of this Stipulation.

8.7.    In the event that any part of the settlement is found to be unlawful, void, unconscionable, or against public policy by a court of competent jurisdiction, the remaining terms and conditions of the settlement shall remain intact.

8.8.    This Stipulation and the exhibits attached hereto represent the complete and final resolution of all disputes among the Settling Parties with respect to the Derivative Matters, constitute the entire agreement among the Settling Parties, and supersede any and all prior negotiations, discussions, agreements, or undertakings, whether oral or written, with respect to such matters.

8.9.    The waiver by one party of any breach of the settlement by any other party shall not be deemed a waiver of any other prior or subsequent breach of the Settlement.  The provisions of the Settlement may not be waived except by a writing signed by the affected party, or counsel for that party.

8.10.    The headings in the Stipulation and its exhibits are used for the purpose of convenience only and are not meant to have legal effect.

8.11.    The Stipulation and the Settlement shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties and the Released Parties.  The Settling Parties agree that this Stipulation will run to their respective successors-in-interest, and they further agree that any planned, proposed, or actual sale, merger, or change-in-control of HCSG shall not void this Stipulation, and that in the event of a planned, proposed, or actual sale, merger, or change-in-control of HCSG they will continue to seek final approval of this Stipulation expeditiously, including, but not limited to, the settlement terms reflected in this Stipulation and the Fee and Expense Award.

8.12.    The Stipulation and the exhibits attached hereto shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the Commonwealth of Pennsylvania and the rights and obligations of the Settling Parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the Commonwealth of Pennsylvania without giving effect to that Commonwealth's choice of law principles.   No representations, warranties, or inducements have been made to any party concerning the Stipulation or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.

8.13.    This Stipulation shall not be construed more strictly against one Settling Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations among the Settling Parties and all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

8.14.    Nothing in this Stipulation, or the negotiations or proceedings relating to the Settlement, is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, the attorney-client privilege, the joint defense privilege, the accountants' privilege, or work product immunity; further, all information and documents transmitted between Plaintiffs' Counsel and Defendants' Counsel in connection with the Settlement shall be kept confidential and shall be inadmissible in any proceeding in any U.S. federal or state court or other tribunal or otherwise, in accordance with Rule 408 of the Federal Rules of Evidence as if such Rule applied in all respects in any such proceeding or forum.

8.15.    The Settling Parties intend that the Court retain jurisdiction for the purpose of effectuating and enforcing the terms of the Settlement.

8.16.    Each counsel or other Person executing the Stipulation or its exhibits on behalf of any of the Settling Parties hereby warrants that such Person has the full authority to do so.  The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties and their Related Persons.

8.17.    The Stipulation may be executed in one or more counterparts, including by signature transmitted via facsimile, or by a .pdf/.tif image of the signature transmitted via e-mail. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

IN WITNESS WHEREOF, the Settling Parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys, dated as of April 6, 2022.

By:  */s/Seth D. Rigrodsky*
  Gina M. Serra
  Seth D. Rigrodsky
  Timothy J. MacFall
  Vincent A. Licata
  **RIGRODSKY LAW, P.A.**
  825 East Gate Boulevard, Suite 300
  Garden City, NY 11530
  Telephone: (516) 683-3516
  Facsimile: (302) 654-7530
  Email: sdr@rl-legal.com
  tjm@rl-legal.com
  vl@rl-legal.com

  *Federal Action Co-Lead Counsel and Counsel for Plaintiff Portia E. McCollum*

By: _____

    Jonathan M. Zimmerman (PA Bar No. 322668)
    Scott R. Jacobsen
    **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
    The Helmsley Building
    230 Park Avenue, 17th Floor
    New York, NY 10169
    Telephone: (212) 223-6444
    Facsimile: (212) 223-6334
    Email: jzimmerman@scott-scott.com
    sjacobsen@scott-scott.com

    Geoffrey M. Johnson
    **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
    12434 Cedar Road, Suite 12
    Cleveland Heights, OH 44106
    Telephone: (216) 229-6088
    Facsimile:  (860) 537-4432
    Email: gjohnson@scott-scott.com

    *Federal Action Co-Lead Counsel and Counsel for*
    *Plaintiffs Maria Batan and Clemente Batan*


By:  */s/ Brett D. Stecker*

    Brett D. Stecker
    **SHUMAN, GLENN & STECKER**
    326 W. Lancaster Avenue
    Ardmore, PA 19003
    Telephone: (303) 861-3003
    Email: brett@shumanlawfirm.com

    *State Action Co-Lead Counsel and Counsel for*
    *Plaintiff Arnold Berezin*


By:  */s/ James M. Ficaro*

    James M. Ficaro
    **THE WEISER LAW FIRM, P.C.**
    Four Tower Bridge
    200 Barr Harbor Dr.
    West Conshohocken, PA 19428
    Telephone: 610.225.0206
    Facsimile: 610.408.8062

Email: jmf@weiserlawfirm.com
*State Action Counsel and Counsel for Plaintiff Liisa*
*Ivary*


By:   */s/ Michael I. Fistel*
      Michael I. Fistel
      **JOHNSON FISTEL, LLP**
      40 Powder Springs Street
      Marietta, Georgia 30064
      Telephone: (470) 632-6000
      Facsimile: (770) 200-3101
      Email: MichaelF@johnsonfistel.com

      *State Action Co-Lead Counsel and Counsel for*
      *Plaintiff David J. Reisman*


By:   */s/ Robert Hickok*
      Robert Hickok
      **TROUTMAN PEPPER**
      **HAMILTON SANDERS LLP**
      3000 Two Logan Square
      Philadelphia, Pennsylvania 19103
      Telephone:  (215) 981-4583

      *Attorneys for Individual Defendants*
      *and Nominal Defendant HCSG, Inc.*